**FILED**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

PETER KALOS and VERON LEE KALOS,

    Plaintiffs,

v.

GREENWICH INSURANCE COMPANY
    SERVE: Registered Agent
    CT Corporation System
    4701 Cox Road, Suite 301
    Glen Allen, Virginia 23060
    email: steven.agosta@xlgroup.com
    fax: (203) 964-0763,

    and

WISENBAKER HOLDINGS, LLC
    SERVE: Registered Agent
    Richard M. Sissman, Esquire
    Fracassi, Mahdavi, Sissman & Rand, LLP
    600 Jefferson Plaza, Suite 308
    Rockville, Maryland 20852
    email: Rsissman@FMSR-Law.com
        Lawyers@fmsrmd.com
        rsissmanesq@his.com
    fax: (301) 762-3027

    Defendants.

2010 JUL 29 ı A 9: 55

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

Case No. 1:10cv841
JCC/JFA

## COMPLAINT

**COME NOW,** your Plaintiffs Peter Kalos and Veron Lee Kalos and file this Complaint seeking emergency, temporary, and permanent injunctive relief, declaratory judgment, and other equitable relief relating to a cloud on title to real property as follows:

    1.    Plaintiffs Peter and Veron Lee Kalos ("the Kaloses") are husband and wife.

1

2. The Kaloses are the owners of real property located in Prince William County with a Parcel Address of 11250 Industrial Road, Manassas, Virginia 20109 (the "Manassas Property"), which is the subject of a cloud on title as more fully set forth below.

3. A Clerk's certified copy of the Kaloses' deed to the Manassas Property is attached as **Exhibit 1**.

4. The Kaloses own Brickwood Contractors, Inc. ("BCI") whose principal place of business is in Prince William County, Virginia.

5. Defendant Greenwich Insurance Company ("Greenwich") holds a United States Department of Treasury certificate of authority as an acceptable surety on Federal bonds as a company incorporated in the State of Delaware with a business address of Seaview House, 70 Seaview Avenue, Stamford, Connecticut 06902-6040.

6. Defendant Wisenbaker Holdings, LLC is a dummy company with a Registered Agent who's office is at 600 Jefferson Plaza, Suite 308, Rockville, Maryland 20852.

7. The deed of trust, real property, and cloud on title complained of are all located in and subject to the jurisdiction of this Court and venue is properly before this Court.

8. This Court has proper jurisdiction over the subject matter and allegations contained herein, and the matter is not only ripe for disposition, but time is of the essence in this case.

## BACKGROUND

9. In summer, 2003 BCI bid on a water processing construction project in Pennsylvania. The project required a Miller Act surety bond.

10.  BCI purchased a bond from Centennial Surety Associates, Inc. ("Centennial"), and a copy of the bond is at **Exhibit 2**. The bond is executed by the President of Centennial, and is executed as Greenwich Insurance Company ("Greenwich").

11.  Centennial gave the Kaloses a copy of its appointment by Greenwich, as Greenwich's agent in the State of Virginia effective when the bond was executed, and a true and accurate copy of the appointment is attached as **Exhibit 3**.

12.  Centennial recorded a lien on the Manassas Property for the bond, and a copy of the lien is attached as **Exhibit 4**.

13.  Centennial had the Kaloses sign an Agreement of Indemnity, and a copy is attached as **Exhibit 5**.

14.  During the construction project, a dispute arose between the bondholder (the Federal Bureau of Prisons) and Greenwich's claims adjuster, resulting in the bondholder threatening to collect money from the claims adjuster for a fake bond. The bondholder alleged the money it was seeking to collect was not an obligation of Greenwich's bond.

15.  When Greenwich learned of the dispute, Greenwich's parent company closed its surety bond business, and a copy of the announcement is attached hereto and incorporated herein as **Exhibit 6**. Greenwich's parent company also closed two other subsidiaries who were selling surety bonds, and a copy of a notice published by The Surety & Fidelity Association of America is attached as **Exhibit 7**.

16.  During the dispute Greenwich's claims adjuster obtained permission to foreclose the Manassas Property for alleged future obligations of Greenwich's bond. The allegation was untrue, and Greenwich was not a party to the state court action that permitted foreclosure.

17. Greenwich's claims adjuster appointed a substitute trustee to foreclose the Manassas Property, and a Clerk's certified copy of the appointment is attached as **Exhibit 8**.

18. Greenwich's claims adjuster hired a private auctioneer to cry an auction of only the building on the Manassas Property, and a copy of the advertisement is attached at **Exhibit 9**.

19. The auction was for alleged delinquent property taxes, the substitute trustee discovered were not delinquent.

20. Before a sale, the substitute trustee agreed to temporarily grant the interest it had to the dummy company Wisenbaker Holdings, LLC, and a copy of the grant is attached at **Exhibit 10**.

21. In a letter to the Virginia Insurance Commission, Greenwich confirmed United States Surety Company ("USSC") is its reinsurer and claims adjuster, and a copy of the letter is attached at **Exhibit 11**.

22. In its letter at Exhibit 11 Greenwich alleges USSC is its underwriting manager, when the Insurance Commissioner of Delaware reports Greenwich had only one underwriting manager and it is not USSC.

23. Plaintiff Veron Kalos complained to the Maryland Insurance Administration. Greenwich's reinsurer testified that its reinsurance of Greenwich's bond, is reinsured by XL Reinsurance America. XL Reinsurance America is Greenwich's parent company (see Exhibit 11). The testimony was on redirect by Centennial's attorney, *see* Pages 116-120 of the transcript attached as **Exhibit 12**.

24. Greenwich's reinsurer and claims adjuster has substituted Greenwich's trustee in the lien, with one appointed to foreclose trust property for reinsurance.

25. Greenwich sustained no loss on its bond.

4

26. Greenwich has made no claim for indemnity.

27. The Federal Bureau of Prisons released Greenwich from its bond on February 1, 2008.

28. The Kaloses cannot remove the substitute trustee, because the substitution is made by Greenwich's claims adjuster.

29. The substitute trustee has no bond instrument, and Greenwich now alleges state court will change the surety on Greenwich's bond. A true and accurate copy of the pleading and hearing transcript is attached at **Exhibit 13**.

30. Substituting Greenwich's trustee, with one appointed to foreclose for reinsurance when Greenwich sustained no loss, was intended to mislead, and did mislead the Kaloses and state court, costing the Kaloses at least $325,000 in legal fees, and is a breach of the Agreement of Indemnity.

31. After appearing to grant an interest in the Manassas Property to a dummy company before a sale, the owners and members of the substitute trustee's firm abandoned their company, and a copy of the notice published by the substitute trustee is attached at **Exhibit 14**.

32. A bank now alleges it lent money to a Corporate Guarantor over one month before the auction of the building. The auction was not for land, and the high bidder defaulted and did not purchase anything. The loan from the bank was guaranteed by indemnity that is now dishonored.

33. The substitute trustee does not deny a check Greenwich's claims adjuster offered to the Federal Bureau of Prisons, has been seized by the Office of the United States Attorney.

34. When the Federal Bureau of Prisons released Greenwich from its bond, it gave Greenwich a release from action by the United States Department of Justice that can be assigned, and a copy is attached at **Exhibit 15**.

35. Greenwich assigned the pardon at Exhibit 15 to the bank, so the bank can misrepresent its loan as being secured by the Manassas Property, when it is not. The bank is seeking contempt charges in state court because Plaintiff Veron Kalos filed a lis pendens on trust property and a copy is attached as **Exhibit 16**.

36. Greenwich is not supposed to be holding trust property in the name of a dummy company, and the Kaloses should not have to file a lis pendens to protect trust property. If the lis pendens is released on July 30, 2010, Greenwich's substitute trustee will sell trust property, or will further cloud the title by appearing to sell the Manassas Property.

37. Absent intervention by the Court, Greenwich will sell the Manassas Property for reinsurance, when Greenwich has no loss to reinsure.

## COUNT I - DECLARATORY JUDGMENT

38. The foregoing paragraphs are realleged and incorporated hereto by reference.

39. Greenwich sustained no loss on its bond.

40. Greenwich agrees it will never sustain a loss on its bond.

41. This Court has jurisdiction to issue declaratory judgment as to the following points:

   a. Whether Greenwich can allege state court will change the surety on its Miller Act bond.

b. Whether Greenwich can continue to hold trust property when it agrees it sustained no loss on its bond and never will.

c. Whether Greenwich can act to collect reinsurance, instead of collecting indemnity of a loss.

d. Whether Greenwich can collect reinsurance, when Greenwich sustained no loss to reinsure.

e. Whether Greenwich's appointment of a substitute trustee is a cloud on title, because Greenwich conveyed nothing when it substituted the Miller Act obligation that is its bond.

**WHEREFORE**, the foregoing premises considered, your Plaintiffs move this court to consider and issue declaratory judgment with respect to the foregoing points, to issue such temporary or permanent injunctive relief as the Court may deem proper to enforce its judgments, and for such other and further relief as the Court may deem proper and equitable.

## COUNT II - EMERGENCY INJUNCTIVE RELIEF

**42.** The foregoing paragraphs are realleged and incorporated hereto by reference.

**43.** The Manassas Property is unique real property, and as such, its loss would constitute irreparable injury as a matter of well-established law, *see* **Fiedfare Corp. v. Bd. of Sup. of Loudoun County**, 20 Cir. L13185, 39 Va. Cir. 393 (1996) ("all land is unique ...").

**44.** Greenwich's substitute trustee could never obtain trust property by adverse possession, *see* **Thompson v. Camper**, 106 Va. 315, 55 S.E. 674 (1906).

**45.** The United States District Court for the Eastern District of Virginia has previously ruled the reinsurer of a Miller Act surety has no obligation, *see* **United States use of Hutchens**

**v. Batson-Cook Co.** (1933, DC Va) 13 F Supp 628. Greenwich's substitute trustee controls $6.634 Million in trust property, which is well over Greenwich's maximum liability on its $769,998 bond, so Greenwich could not collect a loss from a reinsurer.

**46.**   The exclusion of Greenwich, by its claims adjuster in the state court action that permitted foreclosure, is an extrinsic fraud on the court, *see* **Gulfstream Bldg. Associates, Inc. v. Britt** 239 Va. 178, permitted by a fabrication, *see* **In re Miller** 902 P.2d 1019.

**47.**   Greenwich's bond was always enforceable for its obligation 31 U.S.C. 9307(b), and Greenwich cannot deny liability pursuant to 6 Del. C. § 3-407(b). Greenwich would not be liable for bad faith by the Federal Government, *see* **Ohio Cas. Ins. Co. v. United States** (1987) 12 Cl Ct 590, 34 CCF ¶ 75333. The Federal Government did not make Greenwich liable for its dispute with Greenwich's claims adjuster, and released Greenwich from its bond.

**48.**   Greenwich is required by law to control the liens securing its bond, pursuant to 31-CFR-223.5(a) and 6 Del. C. § 7703, and Greenwich holds all the benefits of the Agreement of Indemnity at Exhibit 5. Greenwich decided not to pay anything and was released on February 1, 2008.

**49.**   Neither Greenwich nor its substitute trustee can use any state court judgment to decide what happens to property being held for the Miller Act obligation, *see* **United States ex rel. Sherman v. Carter** (1962, CA9 Cal) 301 F2d 467.

**50.**   Greenwich's claims adjuster's false claim cannot be indemnified, *see* **Mortgages, Inc. v. United States Dist. Court** (1991, CA9 Nev) 934 F2d 209, 91 CDOS 3752, 91 Daily Journal DAR 6116.

**51.**   Injunctive relief is properly issued to avoid irreparable injury, particularly where the balance of harm is slight and the public interest is served.

52. The harm to Greenwich in a delay in the enforcement of its rights, if any, would be slight to nonexistent. Greenwich is not out of pocket any costs or expenditures, controls $6.634 Million in trust property, and Greenwich was released from its bond 2½ years ago on February 1, 2008. Their loss from a delay for a more complete hearing on these issues is nonexistent. The harm to the Kaloses in losing property would obviously be great and immediate.

53. The Kaloses have presented a strong showing of likelihood of success on the merits of these claims given the patently egregious actions of Greenwich.

**WHEREFORE**, the foregoing premises considered, your Plaintiffs move this Court to grant emergency injunctive relief to forestall a sale or further clouding of the Manassas Property, to authorize service of the injunction by any means possible, including facsimile, email, or personal delivery, to assign a date and time for a more complete hearing on this issue, for payment of their legal fees, removal of clouds on title, and for such other and further relief as the Court may deem proper and equitable.

Respectfully Submitted,<br>
**PETER KALOS and VERON LEE KALOS**

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 29 Day of July, 2010.

**PETER KALOS**
*Plaintiff Pro Se*
Post Office Box 223
Broad Run, Virginia 20137-0223
(703) 759-3437 phone

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 29th Day of July, 2010.

*[signature]*

**VERON LEE KALOS**
*Plaintiff Pro Se*
Post Office Box 223
Broad Run, Virginia  20137-0223
(703) 759-3437 phone